UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEVIN REGAL, E.R., a minor, and C.R., a minor, by and through their guardian ad litem MICHAEL LEITCHMAN, individually and as successors in interest to FREDERICK INEA REGAL,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA, LAURIE SMITH, and CONSUELO GARCIA,<br><br>Defendants. | Case No. 22-cv-04321-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COMPLAINT, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 24] |

This case arises out of the tragic death of Frederick Inea Regal ("Regal"), who hanged himself after being detained at the Santa Clara County Jail ("Jail") for one day. Plaintiffs are Regal's adult son and two minor children, suing individually and as Regal's successors in interest. Plaintiffs claim that their father's death resulted from deliberate indifference to his medical and mental health needs on the part of Defendants County of Santa Clara ("County"), former County Sheriff Laurie Smith ("Smith"), and Jail therapist Consuelo Garcia ("Garcia").[1]

Defendants County, Smith, and Garcia move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated on the record at the hearing on February 2, 2023 and discussed below, the motion is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

---

[1] Additional Defendants Santa Clara County Sheriff's Office and Santa Clara Valley Health and Hospital System have been voluntarily dismissed. *See* Notice, ECF 18.

## I. BACKGROUND[2]

Regal was arrested by San Jose police officers on July 28, 2020. Compl. ¶ 20, ECF 1. The arresting officers observed signs that Regal was under the influence of a controlled substance. *Id*. Regal told the officers that he might be having delusions and he asked to speak to a psychiatrist at the Jail. *Id*. The officers transported Regal to the Jail. *Id*. ¶ 21. A medical health intake assessment was conducted at 3:24 p.m. on July 28, 2020, documenting that Regal had a history of mood swings and depression, was thinking about suicide, and appeared to be detoxing. *Id*.

Regal was placed alone in a cell that contained bed linens and an upper bunk that could be (and was) used as a hanging point, that was out of deputies' view, and that lacked any video or audio monitoring system. Compl. ¶ 24. Because of the cell's placement, Jail personnel could not view Regal unless they were close to the cell door. *Id*. Regal was placed on a schedule of checks every 15 minutes as a precaution against suicide. *Id*. ¶ 22.

On July 29, 2020, one of the 15 minute checks was performed by Defendant Garcia, a licensed marriage and family therapist employed at the Jail. Compl. ¶¶ 14, 23. After speaking with Regal, Garcia completed a Progress Note that quoted Regal as saying, "'Yes I'm suicidal'; 'I'm depressed'; and 'personal things are going on in my life.'" *Id*. ¶ 23. Garcia's progress note was filed at 3:35 p.m. on July 29, 2020. *Id*.

Approximately one hour later, at 4:31 p.m. on July 29, 2020, a correctional officer found Regal hanging from a bed sheet attached to the upper bunk in his cell. Compl. ¶ 26. Regal was transported to the Santa Clara Valley Medical Center, where he was placed on life support. *Id*. ¶¶ 27-28. Regal was unmarried, but his three children traveled to the medical center to say goodbye to him as he lay unconscious in his hospital bed. *Id*. ¶ 28. Regal was removed from life support and died on August 5, 2020. *Id*.

According to Plaintiffs, Defendants were on notice of the suicide risks posed by isolating inmates, housing them in cells containing hanging points, and insufficient monitoring. Compl. ¶¶ 17-18. A report generated in 2016 informed the County that the risk of Jail suicides could be

---

[2] Plaintiffs' well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

1  reduced by avoiding isolation, housing inmates in suicide-resistant, protrusion-free cells, and
2  ensuring that metal bunk beds are bolted to the wall in a manner that prevents the frame from
3  being used as an anchor for hanging. *Id.* The report also recommended that inmates who are not
4  actively suicidal but who express suicidal ideation should be observed by staff every 10 minutes,
5  and inmates who are actively suicidal should be observed by staff on a continuous, uninterrupted
6  basis. *Id.* ¶ 18.

7  Plaintiffs allege that in light of Regal's unequivocal statement that he was suicidal, he
8  should not have been housed alone in a cell that was out of deputies' view and contained bed
9  linens and an upper bunk hanging point. Compl. ¶¶ 24-25, 31-34. Plaintiffs also allege that Regal
10 should have been under continuous monitoring or, at the least, should have been checked every 10
11 minutes rather than every 15 minutes. *Id.* Plaintiffs claim that housing a suicidal inmate alone in
12 a cell with bed linens and a hanging point, out of deputies' view and without adequate monitoring,
13 constituted deliberate indifference to Regal's serious medical and mental health needs. *Id.*

14 Plaintiffs filed this suit on July 26, 2022, asserting five claims for violation of federal
15 constitutional rights under 42 U.S.C. § 1983 and one claim for violation of the Americans with
16 Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* Those claims are: (1) Deliberate
17 Indifference under the Fourteenth Amendment (against Garcia and Smith); (2) Loss of Familial
18 Association under the First and Fourteenth Amendments (against Garcia and Smith); (3) *Monell*[3]
19 claim for unconstitutional custom, practice, or policy (against County); (4) *Monell* claim for
20 failure to train (against County); (5) *Monell* claim for ratification (against County); and
21 (6) violation of the ADA (against County).

22 Defendants County, Smith, and Garcia move to dismiss all claims in the complaint under
23 Rule 12(b)(6).

---

[3] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

3

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

Defendants assert that Claims 1-5 for constitutional violations are not adequately pled and that Garcia and Smith are entitled to qualified immunity. Defendants also assert that Claim 6 for violation of the ADA fails because none of the facts in the complaint suggests that Regal was discriminated against on the basis of a disability. In opposition, Plaintiffs argue that Claims 1-5 for constitutional violations are adequately pled and that qualified immunity does not apply. Plaintiffs do not address Claim 6 for violation of the ADA.

Before taking up these arguments, the Court addresses Defendants' Request for Judicial Notice of four County policies: Department of Correction Policy 12.03, Department of Correction Policy 12.05, Adult Custody Mental Health Services Policy 6.2.15, and COVID-19 Prevention and Control Plan for Jail and Juvenile Facilities. *See* RJN, ECF 24-1. Defendants state that these policies are submitted to provide context for Plaintiffs' claims. *See* Mot. at 2, ECF 24. The request for judicial notice is GRANTED for this limited purpose. *See Mangiaracina v. Penzone*, 849 F.3d 1191, 1193 n.1 (9th Cir. 2017) ("We take judicial notice of the Maricopa County Jails Rules and Regulations for Inmates.").

The Court next turns to the parties' substantive arguments.

### A. § 1983 Claims against Garcia and Smith (Claims 1 and 2)

Garcia and Smith are named in Claim 1 for deliberate indifference and Claim 2 for loss of familial association. Defendants contend that both claims are subject to dismissal for failure to allege sufficient facts, and that Garcia and Smith are entitled to qualified immunity. The Court first addresses the adequacy of the claims then the question of qualified immunity.

4

### 1. Deliberate Indifference (Claim 1)

The elements of a pretrial detainee's claim against an individual defendant for deliberate indifference to serious medical needs are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable." *Id.* (internal quotation marks and citation omitted). Plaintiffs have not adequately alleged these elements against either Garcia or Smith.

#### a.   Garcia

Plaintiffs' deliberate indifference claim against Garcia is based on her personal involvement in housing Regal alone in a cell containing linens and a hanging point, out of deputies' view and with allegedly inadequate monitoring. However, it is not clear from the complaint whether Garcia made the initial decision to house Regal in that cell and under those conditions. Nor is it clear from the complaint whether Garcia, as mental health staff, had authority to move Regal to another cell after he told her he was suicidal, to remove the linens from his cell, to order more frequent checks, or to implement other safeguards against suicide.

In opposition to the motion, Plaintiffs assert that the County's policies gave mental health staff the authority to make appropriate housing decisions for inmates at risk for suicide and to take other actions to mitigate suicide risk, including limiting access to possessions or implementing a Ferguson gown.[4] These factual assertions regarding the scope of Garcia's authority to mitigate Regal's suicide risk are not alleged in the complaint. Thus, while Plaintiffs may be able to allege a viable deliberate indifference claim based on Garcia's failure to implement reasonable available measures to abate the risk of Regal's suicide, their claim is inadequate as currently framed.

---

[4] "A Ferguson gown is designed to prevent inmates from hanging themselves." *Tapia Carmona v. Cnty. of San Mateo*, No. 18-CV-05232-LHK, 2021 WL 2778539, at *2 (N.D. Cal. July 2, 2021).

5

1  Defendants characterize Plaintiffs' deliberate indifference claim against Garcia as grounded solely in her failure to modify the interval between Regal's checks from 15 minutes to 10 minutes. They argue that, at most, Garcia's decision to leave the 15 minute schedule in place might give rise to a claim for medical negligence. As Defendants correctly point out, "[t]he mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment," and a plaintiff asserting a deliberate indifference claim "must prove more than negligence." *Gordon*, 888 F.3d at 1125 (internal quotation marks and citation omitted). Defendants seek dismissal of Claim 1 against Garcia on this basis.

Defendants' characterization of Plaintiffs' claim is too narrow. While the complaint does allege that Garcia violated Regal's Fourteenth Amendment rights by setting an inappropriate monitoring schedule, the complaint also alleges that "Defendant Garcia failed to take reasonable measures to mitigate the obvious risk that Decedent, who told her unequivocally that he was suicidal and exhibited other indicia of suicidality, would harm himself." Compl. ¶ 33. Plaintiffs emphasized in their opposition and at the hearing that their theory of liability against Garcia is that she failed to implement a variety of reasonable available measures to abate the risk of suicide after Regal told her in no uncertain terms, "Yes I'm suicidal." Compl. ¶¶ 23-25. While Plaintiffs have not alleged sufficient facts to support that theory, their claim clearly goes beyond professional negligence. Accordingly, the Court will dismiss Claim 1 against Garcia for failure to allege sufficient facts, but not based on Defendants' argument that the claim is nothing more than a disguised medical malpractice claim.

As to Garcia, the motion to dismiss Claim 1 for failure to state a claim is GRANTED WITH LEAVE TO AMEND.

### b.  Smith

Plaintiffs' deliberate indifference claim against Smith is based on a theory of supervisory liability in light of her former role as the County's Sheriff. "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)

6

1  (internal quotation marks and citation omitted). "The requisite causal connection can be
2  established . . . by setting in motion a series of acts by others, or by knowingly refus[ing] to
3  terminate a series of acts by others, which [the supervisor] knew or reasonably should have known
4  would cause others to inflict a constitutional injury." *Id*. at 1207-08 (internal quotation marks and
5  citations omitted, alterations in original).

6      The complaint's allegations regarding Smith's conduct are somewhat muddled. Plaintiffs
7  appear to pursue a theory of personal involvement under the first prong set forth above, alleging
8  that Smith violated Regal's Fourteenth Amendment rights "by intentionally placing Decedent –
9  who stated unequivocally and repeatedly over time that he was suicidal, and who exhibited other
10 indicia of suicidality – alone in a cell that was not suicide-resistant, that had low visibility, and that
11 contained an upper bunk bed and bedsheets with which he could and predictably would hang
12 himself." Compl. ¶ 34. However, Plaintiffs do not allege any facts showing that Smith was
13 personally involved in Regal's housing assignment or was even aware of his existence.

14     Plaintiffs also appear to pursue a theory of causal connection under the second prong set
15 forth above, alleging that Smith "violated Decedent's Fourteenth Amendment rights by
16 intentionally failing to implement a system of checks, and by failing to supervise those who
17 should have been checking, to ensure that Decedent [*sic*] sufficiently frequently to prevent
18 suicide." *Id*. ¶ 35. It is unclear what Plaintiffs mean when they say that Smith failed "to
19 implement a system of checks." As reflected in Defendants' request for judicial notice, the Jail
20 had several policies in place that were potentially relevant to Regal. If Plaintiffs assert that one of
21 those policies was both attributable to Smith and deficient, Plaintiffs must identify the policy and
22 the deficiency. If Plaintiffs assert that there was no policy in place governing checks on inmates,
23 and that the absence of a policy was attributable to Smith, Plaintiffs must allege facts to support
24 that theory. Plaintiffs also must allege facts showing that the deficient policy or absence of policy
25 attributable to Smith caused Garcia and/or others to make the decisions that allegedly resulted in
26 Regal's suicide.

27     As to Smith, the motion to dismiss Claim 1 for failure to state a claim is GRANTED
28 WITH LEAVE TO AMEND.

### 2. Loss of Familial Association (Claim 2)

Claim 2 for loss of familial association is based on alleged deliberate indifference to Regal's serious medical needs by Garcia and Smith. *See* Compl. ¶ 45. Plaintiffs allege that "[t]his deliberately indifferent conduct constitutes unwarranted interference with Plaintiffs' familial association with their father," and "shocks the conscience because the Individual Defendants, and each of them, had ample time to make reasonable decisions that would have mitigated the substantial risk that Decedent would hang himself." *Id*.

"Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[O]nly official conduct that shocks the conscience is cognizable as a due process violation." *Id*. (internal quotation marks and citation omitted). "A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id*.

Here, Plaintiffs have failed to allege an adequate claim for deliberate indifference against Garcia or Smith. As a result, they likewise have failed to allege an adequate claim for loss of familial association based on deliberate indifference.

As to both Garcia and Smith, the motion to dismiss Claim 2 for failure to state a claim is GRANTED WITH LEAVE TO AMEND.

### 3. Qualified Immunity

Defendants argue that regardless of the adequacy of Plaintiffs' allegations with respect to their claims for deliberate indifference and loss of familial association, Garcia and Smith are entitled to qualified immunity because their alleged conduct did not violate clearly established law as required under the second prong of the qualified immunity analysis.

"Qualified immunity protects government officials from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) (internal quotation marks and citation omitted). "Plaintiffs bringing § 1983 claims against

individual officers therefore must demonstrate that (1) a federal right has been violated and (2) the right was clearly established at the time of the violation." *Id*.

"For a right to be clearly established, the right must first be defined at the appropriate level of specificity." *Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022) (internal quotation marks and citation omitted). "Then the [t]he contours of [that] right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Id*. (internal quotation marks and citation omitted, alterations in original). "There need not be a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (internal quotation marks and citation omitted, alterations in original). "The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation." *Id*. at 934-35.

Defendants argue that "to overcome Ms. Garcia and Sheriff Smith's qualified immunity to Plaintiffs' deliberate indifference and familial loss claims, Plaintiffs must identify Supreme Court or Ninth Circuit precedent holding that a mental health worker in a jail (or her supervisor) violates the Constitution if the mental health worker responds to an inmate's suicidal ideation by ordering jail staff to monitor the inmate at least once every 15 minutes." Mot. at 15. Because Plaintiffs have not identified such precedent, Defendants argue, Garcia and Smith are entitled to qualified immunity.

As discussed above, Defendants construe Plaintiffs' claims against Garcia and Smith too narrowly. Plaintiffs' deliberate indifference claim, and derivative familial loss claim, are based on all of the relevant factors regarding Regal's housing after he expressly stated that he was suicidal, including his placement alone in a cell with linens and a hanging point, out of deputies' sight, and with allegedly insufficient monitoring. Plaintiffs have not alleged those claims with adequate specificity, but it appears they may be able to do so if granted leave to amend. Until Plaintiffs clarify the factual bases for their claims against Garcia and Smith, the Court cannot evaluate the potential applicability of qualified immunity. The Court observes that if Defendants indeed housed Regal alone in a cell containing linens and a hanging point, out of deputies' view, after he expressly stated that he was suicidal, this case may be one of "the rare obvious case, where the

9

unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1164 (9th Cir. 2020) (internal quotation marks and citation omitted).

The motion to dismiss Plaintiffs' claims against Garcia and Smith on qualified immunity grounds is DENIED. This ruling is without prejudice to renewal, if appropriate, once Plaintiffs have clarified the bases for their claims against Garcia and Smith.

### B.   *Monell* Claims against the County (Claims 3-5)

Claims 3, 4, and 5 are *Monell* claims against the County. To impose *Monell* liability on the County under § 1983, Plaintiffs must show that (1) Regal had a constitutional right of which he was deprived; (2) the County had a policy; (3) the policy amounts to deliberate indifference to Regal's constitutional right; and (4) "the policy is the moving force behind the constitutional violation." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021). "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (internal citations omitted). Alternatively, "[a] municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). In the present case, Claim 3 is based on the County's alleged unconstitutional customs, practices, or policies, Claim 4 is based on the County's alleged failure to train its Jail staff, and Claim 5 is based on the County's alleged ratification of the conduct of Garcia, Smith, and others.

Defendants argue, and the Court agrees, that Plaintiffs have not adequately identified what policy or policies they claim led to Regal's death. With respect to Claim 3, it is not clear whether Plaintiffs rely on a formal written policy, or on an informal custom or practice. Moreover, the Court cannot discern whether Garcia is alleged to have acted in compliance with such policy or custom/practice. With respect to Claim 4, Plaintiffs allege that the County failed to provide proper training regarding housing and monitoring of suicidal inmates. However, Plaintiffs do not allege

10

1    what training the County provided, how that training was inadequate, or how the allegedly

2    inadequate training led to Regal's death.  The Court cannot discern whether Garcia is alleged to

3    have acted pursuant to her training when she made decisions regarding Regal's housing and

4    monitoring.  Finally, with respect to Claim 5, Plaintiffs allege that the County ratified the conduct

5    of Garcia, Smith, and others.  However, Plaintiffs have not identified a final policymaker for the

6    County who ratified the conduct of others, or what specific conduct was ratified.

7    The motion to dismiss Claims 3, 4, and 5 against the County is GRANTED WITH LEAVE

8    TO AMEND.

### C. ADA Claim against the County (Claim 6)

Claim 6 is brought under Title II of the ADA and is asserted against the County only. "Title II of the ADA prohibits public entities from discriminating on the basis of disability." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (citing 42 U.S.C. § 12132).  Plaintiffs claim that Regal had a mental health impairment that qualified as a disability under the ADA, and that the County discriminated against him by denying reasonable accommodation for that disability.  Compl. ¶¶ 78-81.  Denial of reasonable accommodation allegedly consisted of "placing Decedent alone in a cell with the means to hang himself and without adequate monitoring."  Compl. ¶ 80.

For purposes of this motion, the County does not dispute that Regal was disabled under the ADA.  However, the County correctly points out that the complaint is devoid of facts suggesting that the County denied Regal treatment or other benefit *because of* his disability.  To the contrary, the complaint alleges that the County addressed Regal's mental health needs by implementing 15 minute checks.  Plaintiffs' assertion that the County's measures were inadequate does not give rise to an ADA claim.

Plaintiffs have given no indication that they could amend to state a viable ADA claim, and in fact have not opposed Defendants' motion to dismiss Claim 6 under the ADA.  Consequently, the motion to dismiss Claim 6 against the County is GRANTED WITHOUT LEAVE TO AMEND.

## IV. ORDER

(1) Defendants' motion to dismiss the complaint is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART, as follows:

    (a) As to Claims 1-5, the motion to dismiss is GRANTED WITH LEAVE TO AMEND for failure to allege facts sufficient to state a claim;

    (b) As to Claims 1-2, the motion to dismiss on qualified immunity grounds is DENIED; and

    (c) As to Claim 6, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

(2) Any amended complaint shall be filed by March 29, 2023.

(3) Leave to amend is limited to the deficiencies identified in this order. Plaintiffs may not add new parties or new claims without obtaining prior leave of the Court.

(4) This order terminates ECF 24.

Dated: February 27, 2023

_____
BETH LABSON FREEMAN
United States District Judge