UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEVIN REGAL; E.R., a minor, by and through her guardian ad litem MICHAEL LEITCHMAN; and C.R., a minor, by and through her guardian ad litem MICHAEL LEITCHMAN, individually and as successors in interest to FREDERICK INEA REGAL,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA; CONSUELO GARCIA; and OMAR CEVALLOS,<br><br>Defendants. | Case No. 22-cv-04321-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT, WITHOUT LEAVE TO AMEND**<br><br>[Re: ECF 62] |

Plaintiffs' father, Frederick Inea Regal ("Regal"), hanged himself while detained at the Santa Clara County Jail ("Jail"). Plaintiffs claim that their father's death resulted from deliberate indifference to his serious medical needs by Defendants County of Santa Clara ("County"), Jail therapist Consuelo Garcia ("Garcia"), and correctional staff deputy Omar Cevallos. Defendants move to dismiss the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).

For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART, WITHOUT LEAVE TO AMEND.

## I. BACKGROUND[1]

Regal was arrested by San Jose police officers on July 28, 2020. *See* FAC ¶ 28, ECF 52. The arresting officers observed signs that Regal was under the influence of a controlled substance. *See id.* Regal told the officers that he might be having delusions and he asked to speak to a psychiatrist. *See id.* The officers transported Regal to the Jail and completed an advisory form, checking boxes to indicate that Regal had "Alcohol or Drug Intoxication" and "Bizarre or Aggressive Behavior." *Id.*

At the Jail, a medical health intake assessment was conducted by a non-party marriage and family therapist ("MFT") named Jason Pierce ("Pierce"). *See* FAC ¶ 30. Pierce documented that Regal had a history of mood swings and depression, was thinking about suicide, and appeared to be detoxing. *See id.* Regal was identified as having a "Moderate" chronic risk and a "Moderate" acute risk of suicide. *See id.* Pierce initiated "Close Observation," placing Regal on 15-minute checks as precaution against suicide. *See id.* Pierce electronically signed and filed this entry at 3:44 p.m. on July 28, 2020. *See id.*

Regal was housed alone in cell number 8 in Unit M5-D at the Elmwood Complex for Men and Women. *See* FAC ¶ 31. His cell contained an upper bunk and bed linens. *See id.* The cell door was solid with a small window, and the cell was not equipped with video or audio monitoring. *See id.* Regal was placed on 24-hour lockdown. *See id.*

Defendant Cevallos, a correctional staff deputy, began his shift at 6:00 a.m. on July 29, 2020, and he conducted the ordered 15-minute checks of Regal throughout the day. *See* FAC ¶ 33. Cevallos logged checks at regular intervals spaced approximately 15 minutes apart during his shift. *See id.* Most checks took approximately 1 second and consisted of Cevallos looking through the small window into Regal's darkened cell. *See id.*

On July 29, 2020 at 3:21 p.m., Defendant Garcia – a licensed MFT employed at the Jail – completed at Progress Note for a "15 min check evaluation." FAC ¶ 32. Garcia quoted Regal as saying, "Yes I'm suicidal," "I'm depressed," and "personal things are going on in my life." *Id.*

---

[1] Plaintiffs' well-pled factual allegations are accepted as true for purposes of the Rule 12(b)(6) motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

1   Garcia noted that Regal's mood was "Anxious and Dysthymic" and that he "presents anxious and
2   in distress." *Id*. Garcia ordered the continuation of the 15-minute checks but did not order any
3   other suicide precautions. *See id.* Garcia did not change Regal's housing assignment to a cell
4   without an upper bunk, although at that time there were 32 cells at the Elmwood Complex for Men
5   and Women that did not contain upper bunks. *See id.* ¶¶ 31-32. Garcia did not assign Regal a cell
6   mate, did not remove his bedsheets, did not provide a safety blanket in lieu of bedsheets, and did
7   not implement a Ferguson gown.[2] *See id.* ¶ 32.

8         Cevallos delivered a meal to Regal at approximately 3:22 p.m. on July 29, 2020, which
9   involved a 31-second interaction that was not logged. *See* FAC ¶ 33. Cevallos thereafter
10  continued to log checks at 3:31 p.m., 3:45 p.m., at 4:16 p.m. *See id.* The 4:16 p.m. check lasted 9
11  seconds, during which time Regal said that he could hear people shouting outside the building.
12  *See id.* Cevallos asked Regal "if he was doing well" and Regal said "he was fine." *Id*. The lights
13  in Regal's cell were off, making it difficult for Cevallos to see Regal. *See id.*

14        When Cevallos performed the next check at 4:31 p.m. on July 29, 2020, he found Regal
15  hanging from a bedsheet attached to the upper bunk in his cell. *See* FAC ¶ 34. Regal was revived
16  and transported to the Santa Clara Valley Medical Center, where he was placed on life support
17  *See id.* ¶¶ 35-36. Regal was unmarried, but his three children – Plaintiffs Devin Regal, E.R., and
18  C.R. – visited the hospital to say goodbye to their father while he was unconscious. *See id.* ¶ 36.
19  Regal was removed from life support and died on August 5, 2020. *See id.*

20        Plaintiffs filed this suit on July 26, 2022 and, after motion practice, filed the operative FAC
21  on March 28, 2023. *See* Compl., ECF 1; FAC, ECF 52. Plaintiffs assert the following claims in
22  the FAC: (1) Deliberate Indifference – Fourteenth Amendment (against Garcia and Cevallos);
23  (2) Loss of Familial Association – First and Fourteenth Amendments (against Garcia and
24  Cevallos); (3) *Monell*[3] Claim – Unconstitutional Custom, Practice, or Policy (against County); and
25  (4) *Monell* Claim – Failure to Train (against County).

---

[2] "A Ferguson gown is designed to prevent inmates from hanging themselves." *Tapia Carmona v. Cnty. of San Mateo*, No. 18-CV-05232-LHK, 2021 WL 2778539, at *2 (N.D. Cal. July 2, 2021).

[3] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

United States District Court
Northern District of California

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

As noted above, the FAC asserts two § 1983 claims against Garcia and Cevallos (collectively, "Individual Defendants") and two *Monell* claims against the County. Defendants seek dismissal of all four claims, asserting that Individual Defendants are entitled to qualified immunity and the claims against them fail to allege sufficient facts, and that the claims against the County are not sufficiently pled. In opposition, Plaintiffs argue that Individual Defendants are not entitled to qualified immunity and the claims against them are adequately pled. Plaintiffs also argue that their claim against the County are sufficient under *Monell* and its progeny.

The Court first addresses the claims against Individual Defendants and then the claims against the County.

### A.   Individual Defendants (Claims 1 and 2)

Claim 1, brought by Plaintiffs as Regal's successors in interest, alleges that Garcia and Cevallos were deliberately indifferent to Regal's serious medical needs in violation of the Fourteenth Amendment. *See* FAC ¶¶ 38, 40. Claim 2, brought by Plaintiffs on their own behalf, alleges that Garcia and Cevallos' deliberate indifference led to Regal's death and thus to Plaintiffs' loss of familial association with their father in violation of the First and Fourteenth Amendments. *See* FAC ¶¶ 56, 58-59. Defendants assert that Garcia and Cevallos are entitled to qualified immunity from suit because their alleged conduct did not violate clearly established law as required under the second prong of the qualified immunity analysis. Defendants also contend that the claims against Garcia and Cevallos are not sufficiently pled.

The Supreme Court and the Ninth Circuit have emphasized the importance of resolving the

4

1   issue of qualified immunity at the earliest possible stage in the litigation, including at the motion
2   to dismiss stage if appropriate. *See Behrens v. Pelletier*, 516 U.S. 299, 306-08 (1996)
3   (recognizing that qualified immunity may be raised in a motion to dismiss or a motion for
4   summary judgment); *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 892-93 (9th Cir.
5   2022) (affirming grant of motion to dismiss based on qualified immunity). "That is because
6   qualified immunity gives government officials a right, not merely to avoid standing trial, but also
7   to avoid the burdens of such pretrial matters as discovery." *Sabra*, 44 F.4th at 892 (quotation
8   marks and citation omitted). Pursuant to that guidance, this Court addresses qualified immunity
9   before turning to the adequacy of the claims pled against Garcia and Cevallos.

### 1. Qualified Immunity

When evaluating an assertion of qualified immunity, "a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. Cnty. of Orange ("Gordon II")*, 6 F.4th 961, 967-68 (9th Cir. 2021). "Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages." *Id.* at 968. If qualified immunity is raised in a motion to dismiss, the court must accept as true all well-pled allegations in the complaint and construe them in the light most favorable to the plaintiff. *See Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023). "At the motion to dismiss stage, dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *Id.* (quotation marks and citation omitted).

Defendants argue that Garcia and Cevallos are entitled to qualified immunity under the second prong of the analysis, under which the Court must determine whether the right allegedly violated was clearly established at the time of the alleged misconduct. "In the Ninth Circuit, we begin [the clearly established] inquiry by looking to binding precedent. If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." *Moore v. Garnand*, --- F.4th ----, 2023 WL 6331061, at *5 (9th Cir. Sept. 29, 2023) (quotation marks and citation omitted, alteration in the original). "There need not be a case directly on point for a right to be clearly established, [but] existing precedent must have placed the

1    statutory or constitutional question beyond debate." *Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th
2    Cir. 2022) (quotation marks and citation omitted, alteration in original).  "The plaintiff bears the
3    burden of proving that the right allegedly violated was clearly established at the time of the
4    violation." *Id*. at 934-35.

5          Plaintiffs assert that at the time Regal hanged himself in July 2020, Ninth Circuit precedent
6    clearly established that pretrial detainees have a Fourteenth Amendment right to be housed with
7    reasonable measures in place to abate a known risk of suicide.  Plaintiffs rely on *Conn v. City of
8    Reno*, 591 F.3d 1081 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev.
9    v. Conn*, 563 U.S. 915 (2011), *and opinion reinstated*, 658 F.3d 897 (9th Cir. 2011); *Castro v.
10   Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); and *Gordon v. Cnty. of Orange ("Gordon
11   I")*, 888 F.3d 1118 (9th Cir. 2018).  In *Conn*, the Ninth Circuit held that prisoners are
12   constitutionally entitled to health care that adequately addresses serious medical needs, and that
13   "[a] heightened suicide risk or an attempted suicide is a serious medical need." *Conn*, 591 F.3d at
14   1095.

15         In *Castro*, the Ninth Circuit held "the elements of a pretrial detainee's Fourteenth
16   Amendment failure-to-protect claim against an individual officer are:  (1) The defendant made an
17   intentional decision with respect to the conditions under which the plaintiff was confined; (2)
18   Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant
19   did not take reasonable available measures to abate that risk, even though a reasonable officer in
20   the circumstances would have appreciated the high degree of risk involved – making the
21   consequences of the defendant's conduct obvious; and (4) By not taking such measures, the
22   defendant caused the plaintiff's injuries." *Castro*, 833 F.3d at 1071.  "With respect to the third
23   element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn
24   on the facts and circumstances of each particular case." *Id*. (quotation marks, citation, and
25   brackets omitted).

26         Finally, in *Gordon I*, the Ninth Circuit applied the objective deliberate indifference
27   standard articulated in *Castro* to detainees' claims against state officials for deliberate indifference
28   to serious medical needs.  Gordon I, 888 F.3d at 1124-25.  Based on *Castro*, the Ninth Circuit held

that "the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id*. at 1125. The Ninth Circuit again emphasized that, respect to the third element, "the defendant's conduct must be objectively unreasonable." *Id*. (quotation marks and citation omitted).

This Court agrees with Plaintiffs that *Conn*, *Castro*, and *Gordon I* in combination clearly established prior to 2020 that pretrial detainees have a Fourteenth Amendment right to be housed with reasonable measures in place to abate a known risk of suicide. In 2020, the Ninth Circuit expressly recognized that *Conn* and its other precedents clearly established an inmate's constitutional right to have jail officials respond to "a clear warning that [the inmate] presented an imminent suicide risk." *See NeSmith v. Olsen*, 808 F. App'x 442, 445 (9th Cir. 2020).[4]

The Court finds unpersuasive Defendants' reliance on other cases to show that there was no clearly established right to have jail officials take reasonable measures to abate a known risk of suicide. Defendants rely primarily on *Taylor v. Barkes*, 575 U.S. 822 (2015), and *Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2019). In *Taylor*, the widow of an inmate who hanged himself brought a deliberate indifference claim based on correctional officials' alleged failure to

---

[4] In its prior order granting Defendants' motion to dismiss the complaint, the Court determined that it could not properly address the application of qualified immunity until Plaintiffs clarified the bases for their claims. *See* Prior Order at 9, ECF 45. The Court suggested that based on the facts pled in the original complaint, this may be one of the "rare obvious" cases discussed in *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1164 (9th Cir. 2020), in which the unlawfulness of the officer's conduct is clear even in the absence of clearly established precent. *See* Prior Order at 9-10. Based on the facts alleged in the FAC and the case law discussed above, however, the Court concludes that Plaintiffs have shown that the right allegedly violated was clearly established at the time of Regal's death. The Court therefore need not and does not address the application of *Vazquez* in this case.

7

prevent her husband's suicide. *See Taylor*, 575 U.S. at 822-23. The Supreme Court held that as of 2004, neither its decisions nor those of the Third Circuit clearly established that inmates are entitled to screening for suicide or implementation of any particular suicide prevention protocols. *See id.* 575 U.S. at 826-27. The Supreme Court's holding regarding the state of the law in 2004 is not dispositive of the present case involving Regal's suicide in 2020, by which time the Ninth Circuit's precedents discussed above had clearly established that pretrial detainees have a Fourteenth Amendment right to have jail officials take reasonable measures to abate a known risk of suicide.

*Horton* involved the attempted suicide of a pretrial detainee. *See Horton*, 915 F.3d at 596. The defendant official had no knowledge that the detainee presented a suicide risk, apart from a telephone call from the detainee's mother's opining that the detainee was suicidal. *See id.* 601. The Ninth Circuit held that "there was no case law at the time of the incident clearly establishing that a reasonable officer should have perceived the substantial risk" of suicide. *Id.* In *NeSmith*, the Ninth Circuit distinguished *Horton* from *Conn* on the basis that "Horton had made no clear threat of suicide or suicide attempt." *NeSmith*, 808 F. App'x at 445.

The Court concludes that Plaintiffs have demonstrated that, at the time Regal hanged himself, pretrial detainees had a clearly established Fourteenth Amendment right to be housed with reasonable measures in place to abate a known risk of suicide. That conclusion does not end the Court's qualified immunity analysis, however. In determining whether the clearly established prong is satisfied, the Court "must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful *in the situation he confronted*." *Gordon II*, 6 F.4th at 969 (emphasis added). The Court first discusses the situation Garcia confronted, and then the situation Cevallos confronted.

        **a.**     **Garcia**

Plaintiffs allege that Garcia had responsibility to evaluate inmates' suicide precautions daily or as needed, to renew or discontinue suicide precautions based on clinical presentation, and to make appropriate housing recommendations. *See* FAC ¶ 41. Garcia had discretion to implement a variety of suicide precautions, including recommending different housing, removing

8

an inmate's bedding, providing a safety blanket, and/or implementing a Ferguson gown. *See id.* ¶¶ 42-44. When Garcia evaluated Regal on July 29, 2020, Garcia had access to the mental health evaluation that was performed by Pierce at intake, including Regal's history of mood swings and depression, statement that he was thinking about suicide, and information that he might be detoxing. *See id.* ¶ 44. Moreover, Regal stated unequivocally to Garcia, "Yes I'm suicidal." *Id*. In response, Garcia did nothing but maintain the 15-minute checks previously ordered. *See id.* She did not recommend that Garcia be moved to a cell without an upper bunk, which according to Plaintiffs were available, and did not implement any of the other suicide precautions available to her. *See id.* Plaintiffs allege that under the circumstances, Garcia's conduct was objectively unreasonable. *See id.* ¶¶ 44-45.

Viewing these allegations in the light most favorable to Plaintiffs, the Court finds that it would have been clear to a reasonable jail therapist in Garcia's position, who knew that Regal had stated expressly that he was suicidal and who had a number of reasonably available suicide precautions to choose from, that it was constitutionally inadequate to simply maintain the previously ordered 15-minute checks while leaving Regal housed alone in a cell containing bed linens and a hanging point, out of deputies' view, and without any video or audio monitoring.

Defendants' motion to dismiss the claims against Garcia based on the clearly established prong of the qualified immunity test is DENIED.

### b. Cevallos

Unlike Garcia, Cevallos was not a mental health professional with the attendant responsibilities and authority to implement a variety of suicide precautions. Plaintiffs allege that Cevallos was a correctional staff deputy who was responsible for conducting the 15-minute welfare checks ordered by Mental Health staff. *See* FAC ¶¶ 46-48. Plaintiffs do not dispute that Cevallos conducted the ordered 15-minute checks, and in fact they allege that "Deputy Cevallos' checks were done at regular intervals spaced approximately 15 minutes apart." *Id*. ¶ 48. Plaintiffs suggest that Cevallos should have taken the initiative to stagger the welfare checks, pointing to a written County policy indicating that inmates under close observation should be observed at staggered intervals. *Id*. ¶¶ 46-48. Plaintiffs do not, however, allege that Cevallos had authority to

9

change the 15-minute schedule that was ordered by Mental Health staff.  *See id.*  Plaintiffs also suggest that Cevallos should have made the decision to remove Regal's bedsheets, pointing to a written County policy giving correctional staff deputies discretion to remove clothing and personal belongings when notified by Mental Health staff that the inmate's behavior indicates that those items would present an increased risk for self-harm.  *See* FAC ¶¶ 46, 49.  Plaintiffs do not allege that any Mental Health staff gave Cevallos a notification that would have triggered his authority to exercise his discretion to remove Regal's property.  *See id.*  Finally, Plaintiffs allege that Cevallos should have requested further intervention from Mental Health Staff.  *See id.* ¶ 49.  However, it is clear from the FAC that Regal hanged himself approximately one hour after Garcia evaluated him and ordered the continuation of the 15-minute checks.

Even viewing these allegations in the light most favorable to Plaintiffs, the Court finds that it would *not* have been clear to a reasonable correctional staff deputy in Cevallos' position that he was not taking reasonable precautions to abate Regal's risk of suicide.  That risk was evaluated by Garcia, a mental health professional, and Cevallos followed Garcia's directive to continue with the 15-minute checks.  The Court finds that under the second prong of the qualified immunity analysis it was not clearly established that a correctional staff deputy, who was directed by the Jail's Mental Health staff to perform 15-minute welfare checks of a suicidal inmate, was required to second-guess that directive and take additional precautions against suicide.

Defendants' motion to dismiss the claims against Cevallos based on the clearly established prong of the qualified immunity test is GRANTED.

### 2. Adequacy of Pleading as to Garcia

In addition to seeking dismissal of the claims against the Individual Defendants on the basis of qualified immunity, Plaintiffs also seek dismissal of those claims for failure to allege sufficient facts.  Because Garcia is not entitled to dismissal on the basis of qualified immunity, the Court addresses the sufficiency of Claims 1 and 2 as pled against her.

#### a. Deliberate Indifference (Claim 1)

For ease of discussion, the Court once again sets forth the elements of a pretrial detainee's claim against an individual defendant for deliberate indifference to serious medical needs:  "(i) the

defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon I*, 888 F.3d at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable." *Id.* (quotation marks and citation omitted).

Plaintiffs have adequately alleged these elements as to Garcia. The FAC alleges that as Mental Health staff, Garcia had authority to make decisions regarding the conditions of Regal's confinement and in fact made such decisions when she ordered that the 15-minute welfare checks of Regal be continued while leaving him housed alone in a cell containing bed linens and a hanging point, out of deputies' view and without any video or audio monitoring (element i). The FAC alleges that those conditions put Regal at substantial risk of harm through suicide – a risk that Garcia appreciated because of Regal's express statements of suicidality – and that Garcia did not take reasonable available measures to abate that risk (elements ii and iii). Finally, the FAC alleges that by failing to implement reasonably available suicide precaution measures, such as recommending a change of housing to a cell without an upper bunk, removing the bedsheets, implementing a safety blanket, or implementing a Ferguson gown, Garcia caused Regal's injuries (element iv). The FAC plausibly alleges that Garcia's choice to do nothing but continue the 15-minute welfare checks was objectively unreasonable under the circumstances.

The Court finds unpersuasive Defendants' argument that the deliberate indifference claim against Garcia is a medical malpractice claim in disguise. Plaintiffs' allegations go far beyond asserting a difference of medical opinion or even negligence. Plaintiffs allege facts giving rise to a plausible claim that Garcia did not take reasonable available measures to abate an *express and acknowledged* risk of suicide by Regal. Plaintiffs' allegations are sufficient to satisfy the pleading requirements set forth in *Gordon I*.

The motion to dismiss Claim 1 against Garcia for failure to state a claim is DENIED.

### b. Loss of Familial Association (Claim 2)

Claim 2 for loss of familial association against Garcia is based on Garcia's alleged deliberate indifference to Regal's serious medical needs. *See* FAC ¶ 59. Plaintiffs allege that "[t]his deliberately indifferent conduct constitutes unwarranted interference with Plaintiffs' familial association with their father," and "shocks the conscience because the Individual Defendants, and each of them, had ample time to make reasonable decisions that would have mitigated the substantial risk that Decedent would hang himself." *Id*.

"Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[O]nly official conduct that shocks the conscience is cognizable as a due process violation." *Id*. (internal quotation marks and citation omitted). "A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id*.

Defendants contend that Plaintiffs have failed to allege an adequate claim for deliberate indifference against Garcia, and therefore have failed to allege an adequate claim for loss of familial association. As discussed above, the Court finds that Plaintiffs' deliberate indifference claim against Garcia is adequately pled. Accordingly, Defendants have not identified a basis to dismiss the claim for familial loss.

The motion to dismiss Claim 2 against Garcia for failure to state a claim is DENIED.

### C. Adequacy of *Monell* Claims against the County

Claims 3 and 4, brought by Plaintiffs as Regal's successors in interest, are *Monell* claims against the County. To impose *Monell* liability on the County under § 1983, Plaintiffs must show that (1) Regal had a constitutional right of which he was deprived; (2) the County had a policy; (3) the policy amounts to deliberate indifference to Regal's constitutional right; and (4) "the policy is the moving force behind the constitutional violation." *Gordon II*, 6 F.4th at 973. "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional

12

violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (internal citations omitted).  Alternatively, "[a] municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Claim 3 is based on the County's allegedly unconstitutional customs, practices, and policies, while Claim 4 is based on the County's alleged failure to provide effective suicide prevention training to its Jail staff.  Defendants move to dismiss both claims as inadequately pled.

### 1. Custom, Practice, or Policy (Claim 3)

Claim 3 asserts "that the County had the customs, practices, and/or policies described below, each of which individually, and also combined, constituted deliberate indifference to the constitutional rights of suicidal inmates, including Decedent, because they failed to mitigate and/or increased the substantial risk of self-harm." FAC ¶ 66.  First, Plaintiffs allege that the County had an informal custom and practice of housing suicidal inmates in cells that were not suicide-resistant. *See id.* ¶ 69.  The FAC defines a "suicide-resistant cell" as a cell that lacks obvious anchor points to hang oneself. *Id.* ¶ 18.  A "suicide-resistant cell" is different from a "safety cell," which is a padded cell devoid of any furniture or standard fixtures. *Id.*  According to Plaintiffs, "[t]he County had a custom and practice of housing suicidal inmates in cells that contained obvious anchor points, including upper bunks that were not flush with the wall, as well as bedsheets." *Id.* ¶ 69.  Plaintiffs assert that even if the County did not have specifically-designed suicide resistant cells, the County could have taken steps to remove hanging points from some cells, for example by removing the upper bunks or closing the gap between the upper bunks and the wall in cells intended to house suicidal inmates. *See id.*  Instead, the County housed suicidal inmates in cells with obvious anchor points. *See id.* ¶ 70.

Next, Plaintiffs allege that in light of the County's custom and practice of housing suicidal inmates in cells with obvious anchor points, the County's written policies were deliberately indifferent to the constitutional rights of suicidal inmates. *See id.* ¶ 71.  Plaintiffs allege that one such policy is Department of Corrections Policy No. 12.05, requiring that correctional officers

conduct 15-minute welfare checks but not requiring that those checks be staggered. *See id.* ¶ 72. Plaintiffs also cite generally to the County's policies "pertaining to 15-minute checks," asserting that those policies did not require deputies conducting welfare checks to engage with the inmate. *See id.* ¶ 73. Finally, Plaintiffs point to Section V.D. of Policy No. 12.05, which permits custody staff to remove "clothing and personal belongings" under certain circumstances but does not make clear that bedsheets fall within that category. *See id.* ¶ 74.

The Court understands Plaintiffs to be asserting a *Monell* claim based on the County's custom and practice of housing suicidal inmates in cells with obvious hanging points, and on several of the County's written policies that Plaintiffs contend do not mandate adequate suicide precautions in light of the danger posed by housing suicidal inmates in cells with hanging points. Defendant's motion does not address the alleged informal custom and practice of housing suicidal inmates in cells with obvious anchor points, which the Court understands to be the heart of Claim 3. *See* FAC ¶¶ 67-70. Defendants instead focus on the County's allegedly deficient policies with respect to 15-minute checks and bedsheets.

In the Court's view, Plaintiffs have pled an adequate and plausible *Monell* claim. Plaintiffs allege that Regal had a Fourteenth Amendment right to be housed with reasonable measures in place to abate a known risk of suicide and that he was deprived of that right (element 1). The County allegedly had a custom and practice of housing suicidal inmates in cells containing obvious hanging points, and written policies that did not clearly require other precautions against suicide such as staggered 15-minute welfare checks and removal of bedsheets (element 2). Plaintiffs allege that these policies amounted to deliberate indifference to the known risk of inmate suicides (element 3). In support of that allegation, Plaintiffs cite a 2016 report authored by the County's own expert, stating among other things that the most important consideration in preventing suicide by Jail inmates is housing suicidal inmates in suicide-resistant, protrusion-free cells. *See* FAC ¶¶ 16-17, 67. The County allegedly took that report seriously, as it obtained funds and in 2018 began construction on the Jail to remove upper bunks and replace lower bunks.[5] *See*

---

[5] The FAC also cites to a Consent Decree entered by the County in another case. *See* FAC ¶¶ 20, 67. Defendants argue vehemently that reliance on the Consent Decree in this case is

14

1  *id.* ¶ 19.  Finally, Plaintiffs allege that pursuant to the County's customs, practices, and policies, Regal was housed in a cell with obvious hanging points, and without other reasonable precautions against suicide put in place, which resulted in him hanging himself (element 4).  For pleading purposes, Plaintiffs' allegations are sufficient to make out a *Monell* claim against the County based on allegedly unconstitutional customs, practices, and policies.

Defendants' motion to dismiss Claim 3 is DENIED.

### 2. Failure to Train (Claim 4)

Claim 4 alleges that the County failed to provide effective suicide prevention training to Jail staff working with suicidal inmates.  *See* FAC ¶ 82.  "Failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees."  *Benavidez*, 993 F.3d at 1153.  "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees."  *Id*. at 1153-54.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Id*. at 1154 (quotation marks and citation omitted).

Plaintiffs' failure to train claim rests primarily on a single conclusory sentence:  "Prior to Mr. Regal's suicide, the County failed to provide effective suicide prevention training to staff working with suicidal inmates, including failing to ensure that mental health staff who would be conducting 15-minute check evaluations, including defendant Garcia, received suicide prevention training."  FAC ¶ 82.  Plaintiffs also allege that "[t]he County did not provide defendant Garcia with suicide prevention training until after Mr. Regal's death."  *Id*.  These allegations are insufficient.  First, it is entirely unclear from these allegations what training the County did provide to Jail staff.  Second, it is not clear what Plaintiffs mean by "suicide prevention training."

---

inappropriate.  The Court need not decide this issue for purposes of this order, because the Court concludes that Plaintiffs have pled an adequate *Monell* claim without reference to the Consent Decree.  The Court has not considered the Consent Decree in evaluating Plaintiffs' claims.

15

As a result, Plaintiffs' allegations do not give rise to a reasonable inference that the County's training policy amounts to deliberate indifference to inmates' constitutional rights. Nor do Plaintiffs' allegations give rise to a reasonable inference that Regal's injury would not have occurred had the County provided additional training.

The motion to dismiss Claim 4 is GRANTED.

### D.     Leave to Amend

Having determined that Claims 1 and 2 against Cevallos and Claim 4 against the County are subject to dismissal, the Court must determine whether leave to amend those claims is appropriate. Leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id*.

The Court finds no undue delay (factor 1) or bad faith (factor 2). However, Plaintiffs have failed to cure the deficiencies in their *Monell* claim against the County for failure to train despite guidance from the Court when it dismissed the complaint (factor 3). With respect to Plaintiffs' claims against Cevallos, Plaintiffs have not suggested that they could add facts that would alter the Court's qualified immunity analysis, so granting leave to amend those claims would be futile (factor 5). Under these circumstances, granting Plaintiffs further leave to amend would impose undue prejudice on Defendants (factor 4).

Accordingly, Claims 1 and 2 against Cevallos, and Claim 4 against the County, are DISMISSED WITHOUT LEAVE TO AMEND.

//

//

//

## IV. ORDER

(1) Defendants' motion to dismiss the FAC is GRANTED IN PART AND DENIED IN PART, WITHOUT LEAVE TO AMEND, as follows:

   (a) The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to Claims 1 and 2 against Cevallos and Claim 4 against the County; and

   (b) The motion to dismiss is DENIED as to Claims 1 and 2 against Garcia and Claim 3 against the County.

(2) Defendants SHALL answer the FAC.

(3) Plaintiffs may not add any claims or parties to their pleading without express leave of the Court.

(4) This order terminates ECF 62.

Dated: October 31, 2023

_____
BETH LABSON FREEMAN
United States District Judge